U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2014 SEP 18 AM 8:40

CLERK

BY _____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

METROPOLITAN PROPERTY AND )
CASUALTY COMPANY as subrogee of )
ERIKA K. HELLAND, )
 )
    Plaintiff, )
 )
v. ) Case No. 5:12-cv-274
 )
DAEWOO ELECTRONICS AMERICA, )
INC., )
 )
    Defendant. )

**OPINION AND ORDER RE:
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

(Doc. 52)

    This product liability subrogation matter is before the court on defendant's motion for summary judgment. Plaintiff Metropolitan Property & Casualty Company (MetLife) brought this suit against defendant Dongbu Daewoo Electronics America, Inc. (DDEAM)[1] alleging that a window air conditioner distributed by defendant was defective and caused a fire to occur at the home of its insureds, Erika Helland and Andrew Gould. Defendant has moved for summary judgment on the grounds that plaintiff cannot prove that the subject air conditioner was made by Dongbu Daewoo Electronics Corporation (Daewoo), and even if the unit was made by Daewoo, that plaintiff cannot prove that the unit was distributed by defendant. (Doc. 52.) The court held a hearing on defendant's motion on September 17, 2014.

**I.    Facts**

    The following facts are undisputed except where otherwise noted. MetLife is a corporation with a principal place of business in Rhode Island that is authorized to issue insurance policies in Vermont. DDEAM is a Florida corporation, and is not registered as a

---

[1] Defendant changed its name from Daewoo Electronics America, Inc. to Dongbu Daewoo Electronics America, Inc. in February 2013, after plaintiff filed this lawsuit. (Doc. 59-6 at 7-8.)

domestic or foreign corporation in Vermont. From 2006 to 2009, DDEAM was the U.S. distributor of products manufactured by Daewoo, a South Korean corporation. DDEAM does not manufacture or design air conditioning units or any other electronic product. (Doc. 1 ¶ 1; Doc. 9 ¶¶ 4-5; Doc. 53 ¶ 2.)

On August 22, 2011, the home of Andrew Gould and Erika Helland was damaged by a fire that started in a window air conditioning unit. The Gould/Helland property was insured by MetLife, which paid for their losses. (Doc. 53 ¶¶ 4-5.)

The air conditioning unit itself was heavily damaged and the brand name and serial number were not discernible after the fire. Mr. Gould testified in a deposition that he was "positive" that the unit was a Daewoo "[b]ecause I looked at it every day and it was a running joke. I turned it on, Daewoo or she'd say . . . don't forget to turn the Daewoo . . . . We just thought it was funny. Our neighbors had a Daewoo car at the time we purchased it." (Doc. 59-3 at 40.) Ms. Helland similarly remembered that the unit was a Daewoo because "I never heard of Daewoo before . . . so then it was a running joke in our house, Daewoo it's hot in here . . . . I remember because we had never heard of this before and I had never even heard of this company before. It was kind of funny." (Doc. 59-4 at 43-44.)

Mr. Gould testified that the air conditioning unit had no digital components. "It had a flip on and off switch . . . and two knobs." (Doc. 59-3 at 18.) He testified that the controls were vertically arranged on the left side of the unit, approximately three or four inches from the top of the unit. (*Id*.) He recalled that the unit had light blue Daewoo insignias on the front right-hand side of the unit and on the left side near the controls. (*Id*. at 19.) He testified that the unit "had high, medium, low and a fan setting and then it had a knob that increased the coolness . . . . It wasn't a—didn't have a temperature per se like the digital ones do. It had one of those progressively increasing." (*Id*. at 23.) The unit did not have a remote control. (*Id*. at 18.)

Mr. Gould and Ms. Helland purchased the air conditioning unit from Mr. G's, a liquidator and reseller of goods located in Windsor, Vermont, in May 2009. (Doc. 53 ¶ 8). Mr. G's resells products purchased from other retailers. David Gorham, the owner of Mr. G's, testified in a deposition that Mr. G's does not order specific items, but instead accepts whatever is offered by

the retailer. (Doc. 59-5 at 10-11.) Mr. Gorham stated that the selection of products entering his stores was "[a]bsolutely, [one] hundred percent random." (*Id.* at 12.)

Mr. Gorham stated that Mr. G's typically purchased air conditioners from Costco and BJ's, and that in 2009 most of the air conditioners would have come from Costco. Mr. G's would sometimes purchase the inventory of hardware stores as well. Mr. Gorham was unable to recall if Mr. G's had purchased goods from hardware stores during 2008 or 2009. (*Id.* at 18-19.)

Mr. Gorham testified that Mr. G's did not keep records of the specific items that it had on its shelves. Rather, it only kept track of the amount it paid to the retailer for the truckload of items purchased. Thus, Mr. G's had no record of which brands of air conditioners it sold in 2009. (*Id.* at 15-16.) He stated that if an item such as an air conditioner did not sell in a given season, it would be taken to a storage facility, and placed back on the shelves the following year. (*Id.* at 30.) He testified that neither he nor his staff recalled Mr. G's having carried Daewoo air conditioners. Mr. Gorham stated that "Daewoo, if we get one it must be very rare because it's not the norm," but it was not impossible for Mr. G's to have carried a Daewoo air conditioner in the past. (*Id.* at 16, 21.)

Jung Han Kim is the president of DDEAM. He testified that during the period 2006 to 2011, DDEAM distributed Daewoo air conditioners to the following retailers: Costco, ShopRite, Brand Smart, Stop & Shop, and also to Imperial, a distributor. (Doc. 59-6 at 19, 21.) He stated that Brand Smart is only located in Florida and Atlanta, but the other retailers did business in the northeast United States. (*Id.* at 20.) DDEAM has never sold products to BJ's. (*Id.* at 53.)

Mr. Kim testified that all of the air conditioning units sold to Costco were "digital control only" and had remote controls. (*Id.* at 46.) He stated that Daewoo still sells both digital and analog air conditioners. (*Id.* at 47.) According to Mr. Kim, DDEAM distributed analog air conditioners to ShopRite from 2006 to 2008; to Stop & Shop from 2006 to 2007; to Brand Smart from 2006 to 2009; and to Imperial in 2006. (*Id.* at 54-55.) He stated that DDEAM takes back any unsold units from Costco at the end of the season, and offered to do the same for ShopRite and Stop & Shop but had never been asked by those stores to do so. (*Id.*)

Mr. Kim testified that the serial number of each air conditioner was listed on a sticker that was placed on the back of the unit, along with the company's name and other product

3

specifications. (*Id.* at 31.) He testified that he did not know what material the sticker was made of, but that it was silver colored and "not a normal paper." (*Id.*) He did not know whether the sticker was fireproof. (*Id.* at 32.) Apparently, no sticker was found on the unit involved in the fire.

During his deposition, Mr. Kim examined certain photographs of the burned air conditioner and stated that it was "similar in shape" to a Daewoo unit, but that "based on [the] side shape, I don't think it's our product." (*Id.* at 32.) He stated that the openings on the left-hand side of the unit "[did not] look familiar." (*Id.* at 34.)

Plaintiff had the burned air conditioning unit examined by an electrical engineering expert, Joel Liebesfeld. Mr. Liebesfeld concluded "with a reasonable degree of certainty, that the subject AC appliance was manufactured by Daewoo." (Doc. 59-1 at 10). He based this conclusion on his determination that the air conditioning unit involved in the fire contained a Rechi compressor, a Klixon thermal protective device, and a Guangdong Chigo motor. All of these companies are Daewoo suppliers. In addition, Mr. Liebesfeld compared the unit to another analog Daewoo air conditioner (model number DWC-0520FCL), which contained the same compressor, thermal protector, and motor, made by the same suppliers, as the unit involved in the fire. (*Id.* at 9.) Mr. Liebesfeld also found that the dimensions and layout of the burned unit were similar to the exemplar device. (*Id.*) He stated in his report that "[c]learly, the subject and exemplar bottoms are different, representing two different models, however the overall measurements approximates the Daewoo exemplar. The model [number] of the subject appliance is not known." (*Id.* at 16.)

The model examined by Mr. Liebesfeld, DWC-0520FCL, was only distributed in the United States in 2012 and 2013. (Doc. 59-11 at 1.) DDEAM distributed a similar model, DWC-F0520CL, in the United States between 2006 and 2009. (Doc. 59-10 at 1.) The "Use and Care Manual" for this model depicts a unit with side vents that are shaped differently than the burned unit. (Doc. 53-7; 53-17.) DDEAM distributed seven other analog models in the United States between 2007 and 2011. (Doc. 53-11.) Plaintiffs conceded at the hearing in this matter that none of these models appear to match the burned unit.

## II. Summary Judgment Standard

4

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, "[t]he court must resolve all ambiguities and draw all inferences in favor of the non-moving party." *Westinghouse Credit Corp. v. D'Urso*, 278 F.3d 138, 145 (2d Cir. 2002). "If there is any evidence in the record from which a reasonable inference could be drawn in favor of the non-moving party on a material issue of fact, summary judgment is improper." *Id.*

### III. Analysis

Defendant argues that it is entitled to summary judgment because plaintiff has failed to present evidence sufficient to establish that the air conditioning unit involved in the fire was manufactured by Daewoo. The court disagrees.

Viewed in the light most favorable to plaintiff, there is sufficient evidence for a jury to conclude that the air conditioner was manufactured by Daewoo. First, the insureds both testified that they were sure the air conditioner was a Daewoo brand unit. The name stuck in their minds because they had never heard of it before, and they thought the name sounded funny, to the point that it became a running joke between them to say the word "Daewoo."

The insureds' testimony is supported by plaintiff's expert's report. The expert compared the inner components of the air conditioner to a Daewoo-brand exemplar and found that the units both contained the same brand and type of compressor, motor, and thermal protective device. The compressor, motor, and thermal protective device were each made by a different Chinese component manufacturer. All of the component manufacturers were Daewoo suppliers. Further, the dimensions and layout of the two units were similar. The expert determined that the burned unit was not the same model as the exemplar (DWC-0520FCL) because the bottom panels of the units were shaped differently, but found the units were sufficiently similar to conclude that the burned unit was manufactured by Daewoo.

Defendant argues that the three Chinese component manufacturers have other customers besides Daewoo that manufacture air conditioners. However, this does not mean that the

5

component manufacturers supply the same components to Daewoo as they do to their other customers. The fact that both the burned unit and the Daewoo exemplar contained three very similar major components made by the same three manufacturers is additional evidence that could support an inference by the jury that the burned unit was a Daewoo.

Defendant further argues that there is no possibility that a Daewoo air conditioner could have found its way onto Mr. G's shelves, because DDEAM never distributed analog air conditioners to Costco. While Mr. G's mainly purchased air conditioners from Costco and BJ's Wholesale Club, Mr. Gorham testified that the store would occasionally purchase inventory from other retailers as well. He noted that the selection of air conditioners carried by Mr. G's was "completely random," and agreed that Mr. G's could have carried a Daewoo air conditioner at some point. That an occurrence is unlikely does not make it impossible.

Defendant also argues that the burned air conditioner unit does not match any identified Daewoo model. In the statement of undisputed facts accompanying its motion for summary judgment, defendant states that "[f]rom 2006-2009, DDEAM distributed the following 'analog' models of air conditioners in the United States: (1) DWC-056CL; (2) DWC-060CL; (3) DWC-073CL; (4) DWC-094CL; (5) DWC-121CL; (6) DWC-F0520CL; (7) DWC-F0820CL; and (8) DWC-F1220CL." (Doc. 53 ¶ 22.) DDEAM cites an email DDEAM's attorney sent to plaintiff's attorney stating that DDEAM sold the above-listed air conditioner models, with the exception of the sixth model listed, to ShopRite and Brand Smart during 2007 to 2011. (Doc. 53-11.) In a subsequent email, DDEAM's attorney stated that the sixth model, number DWC-F0520CL also "was, apparently, distributed during the relevant time frame (2007-2011)," but he does not say to which stores. (*Id.*)

It is true that the burned unit does not appear to match the exact specifications of any of these models, based on the pictures and descriptions contained in their product manuals. (Docs. 53-12–53-19.) However, this does not eliminate any possibility that the unit was made by Daewoo. DDEAM did not provide any information regarding which analog models it distributed to U.S. stores in 2006. Moreover, in addition to Costco, ShopRite and Brand Smart, DDEAM also distributed Daewoo air conditioners to Stop & Shop and Imperial. DDEAM did not provide any information regarding the models it distributed to either of these companies for any period between 2006 and 2009. Thus, DDEAM has not shown that "[t]he dimensions of the Subject

6

Unit do not match the dimensions of any of the analog models of air conditioner distributed by DDEAM during [2006 to 2009]," as it asserts in its statement of undisputed facts. (Doc. 53 ¶ 31). There remains a real possibility that another model of Daewoo air conditioner was distributed by DDEAM to Stop & Shop or to Imperial (or to ShopRite or Brand Smart during 2006) and found its way to Mr. G's shelves, where it was purchased by the insureds.

As there is a genuine factual dispute regarding whether Daewoo made the burned air conditioner, defendant is not entitled to summary judgment. Defendant's motion is DENIED. (Doc. 53.)

Dated at Rutland, in the District of Vermont, this 17th day of September, 2014.

Geoffrey W. Crawford, Judge
United States District Court